UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT ALLEN WALKER,

               Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

               Defendant.

Case No. 3:17-cv-05479-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Scott Allen Walker has brought this matter for judicial review of defendant's denial of his application for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

I. BACKGROUND

On March 20, 2014, Mr. Walker filed an application for a period of disability and disability insurance benefits and another application for supplemental security income benefits. Dkt. 9, Administrative Record (AR) 16. He alleged in his applications that he became disabled beginning October 15, 2013.[1] *Id.* His application was denied on initial administrative review and

---

[1] SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on September 22, 2015. AR 33-69. Mr. Walker and a vocational expert appeared and testified.

The ALJ found that Mr. Walker could perform jobs that exist in significant numbers in the national economy, and therefore that he was not disabled. AR 16-26 (ALJ decision dated January 28, 2016). The Appeals Council denied Mr. Walker's request for review on April 20, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Walker appealed that decision in a complaint filed with this Court on June 23, 2017. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

Mr. Walker seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, for further administrative proceedings including a new hearing. He argues that the ALJ misapplied the law and lacked substantial evidence for her decision. He contends that the ALJ erred at steps two and five of the five-step criteria. The alleged errors concern the ALJ's reasons for finding allergic bronchopulmonary aspergillosis (ABPA) not to be a severe impairment and for discounting a physician's assistant's opinion about Mr. Walker's capabilities. For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law and substantial evidence supports her decision. Consequently, the undersigned affirms the decision to deny benefits.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

ORDER - 2

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

At issue here is the ALJ's step-two determination about which of Mr. Walker's impairments qualify as "severe," the ALJ's consideration of the medical opinion evidence in assessing Mr. Walker's residual functional capacity (RFC), and the ALJ's consequent finding at step five that Mr. Walker can perform jobs existing in significant numbers in the national economy.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,*

ORDER - 3

495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S STEP TWO DETERMINATION

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. §§ 404.1520, 416.920. In this case, the ALJ determined that Mr. Walker had three severe impairments: moderate chronic obstructive pulmonary disease, moderate asthma, and insomnia secondary to steroid therapy for chronic obstructive pulmonary disease. AR 18. Mr. Walker contends that the ALJ erred in failing to find allergic bronchopulmonary aspergillosis (ABPA) to also be a severe impairment at step two.

An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless

ORDER - 4

claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049.

The Ninth Circuit decided the error was harmless because step two had been decided by the ALJ in the claimant's favor, and the ALJ was required to consider all impairments in the RFC, whether "severe" or not. *Buck*, 869 F.3d at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. The ALJ decided step two in Mr. Walker's favor, and the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing Mr. Walker's RFC. *See Buck*, 869 F.3d at 1049. The ALJ considered Mr. Walker's ABPA and its effects in assessing Mr. Walker's RFC. AR 19 ("Because the claimant has a severe impairment all of his conditions were considered in combination throughout this decision, regardless of the individual label or severity of any particular impairment."), 20-21 (recounting history of respiratory illness), 22-24 (weighing medical opinions on limitations from respiratory conditions).

To the extent Mr. Walker challenges *how* the ALJ considered his lung conditions in the

ORDER - 5

RFC analysis, the Court addresses that argument below.

## IV. THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the un-contradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

ORDER - 6

evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995). In addition, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

A physician's assistant is an "other medical source," who is "not technically deemed to be" an "acceptable medical source," but whose opinion nevertheless is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. SSR 06-03p, 2006 WL 2329939 *3. When an ALJ rejects the opinion of an "other medical source" like a physician's assistant, the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016).

A. <u>The ALJ's Consideration of Medical Evidence at Steps Three, Four, and Five</u>

At step three of the five-step "sequential evaluation process," the ALJ determined that Mr. Walker does not have an impairment or combination of impairments that meets the criteria of an impairment listed in the regulations. AR 19; *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Mr. Walker does not challenge this determination.

Before determining at steps four and five whether Mr. Walker is disabled, the ALJ performed a more detailed assessment of the medical evidence to arrive at Mr. Walker's RFC. The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether

ORDER - 7

he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." Id. The ALJ based her assessment of Mr. Walker's RFC on an examination of the medical evidence, and in part on her rejection of the opinion of Greg Watson, PAC, that Mr. Walker's lung conditions would significantly limit his ability to perform functions necessary to hold a job. AR 19-24.

The ALJ found that Mr. Walker had the RFC

> **to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift 10 pounds occasionally and less than 10 pounds frequently. He can stand and walk up to two hours in a workday and sit without limitation. He can frequently balance. He can occasionally climb ramps and stairs, stoop, crouch, crawl, and kneel. He can never climb ladders, ropes, or scaffolds. He must avoid even moderate exposure to inhaled irritants and extremes of temperature and humidity. He must avoid exposure to hazards such as unprotected heights and large moving equipment. He can understand, remember, and carry out simple instructions that can be learned through repetition in a setting where, if necessary, he would be allowed to consult a checklist for accuracy.**

AR 19 (emphasis in original).

Using this RFC, the ALJ determined at step four that Mr. Walker could not perform his past relevant work as an electrician and a protective signal installer. AR 24.

The vocational expert testified that a person with Mr. Walker's RFC could work as an "order clerk, food and beverage," a telephone solicitor, or a final assembler. AR 64-65. Based on that testimony, the ALJ found Mr. Walker not disabled at step five. AR 24-25.

B.  PAC Watson's Opinion

Greg Watson, PAC, completed a check-off form opining on Mr. Walker's limitations from his condition in August 2015. AR 1207-11. Mr. Watson circled shortness of breath, chest tightness, wheezing, fatigue, and coughing as Mr. Walker's symptoms. AR 1207. He identified

ORDER - 8

as objective bases for his opinions: "Bronchiectasis, infiltrated, IgE > 4000, (+) ABPA panel." AR 1207. He summarized: "Patient w/ persistent respiratory illness with variable day-to-day symptoms. Currently moderately limited." AR 1211. Mr. Watson wrote that Mr. Walker's symptoms and limitations began in April 2013, but elsewhere he wrote that Mr. Walker had been "[f]ollowed by the office since 4/2/14." AR 1207, 1211.

In the portion of the form asking the health care provider to "estimate your patient's functional limitations if your patient were placed in a competitive work situation" (emphasis omitted), Mr. Watson wrote, "Not evaluated at this clinic." AR 1208. He made the same note in the portions of the form requesting information about limits on lifting and carrying and on other exertional limitations. AR 1209. He did opine, however, that Mr. Walker would need to take one to three unscheduled breaks per workday, and during those breaks he would need to sit quietly for 15-20 minutes at a time. AR 1209. Mr. Watson further opined that Mr. Walker is likely to be "off task" 25 percent of the time or more; that he is capable of only low stress work; and that he is likely to miss about four days of work per month. AR 1210.

C. <u>The ALJ's Analysis of Mr. Watson's Opinion</u>

The ALJ gave Mr. Watson's opinion "limited weight because the opinions of treating and examining providers demonstrated that the claimant is not as limited as opined by Mr. Watson." AR 24. The ALJ noted that Mr. Watson opined that Mr. Walker's limitations began in April 2013 even though Mr. Watson did not begin treating Mr. Walker until April 2014. AR 23. The ALJ also observed that "Mr. Watson did not perform a functional assessment, and nothing throughout the treatment record indicates he was in the position to determine the claimant would be off task 25 percent of the day." *Id.* And the ALJ noted that Mr. Watson did "not explain how the claimant's need [to] sit quietly on breaks would be inconsistent with performing sedentary

ORDER - 9

work or why the claimant would miss so much work," observing that while the record shows "a few acute exacerbations during the period at issue," those "did not occur with such frequency so as to preclude employment." AR 23-24.

D. <u>The ALJ Gave Germane and Supported Reasons to Discount Mr. Watson's Opinion</u>

The ALJ gave sufficient reasons to discount Mr. Watson's opinion.

As a preliminary matter, the parties dispute Mr. Watson's role in Mr. Walker's care and, as a result, the ALJ's burden in rejecting Mr. Watson's opinion. The parties agree that Mr. Watson worked in Dr. Vishal Sekhri's office and that Dr. Sekhri was Mr. Walker's treating pulmonary specialist. *See* AR 21. Mr. Walker contends that Mr. Watson therefore gave his opinions as an "agent" of Dr. Sekhri.

The Commissioner responds that this inference is unfounded. The Commissioner points out that Mr. Walker testified that he was seen by Mr. Watson only two or three times; that, as the ALJ noted at the hearing, Mr. Watson's name does not appear on any treatment notes in the record; and that those treatment notes suggest that Dr. Sekhri actually declined to sign disability paperwork for Mr. Walker. *See* AR 60-61, 1071-72 (noting Mr. Walker "seems like he is quite noncompliant with his medications" and had brought disability paperwork, and stating "I will follow the patient in 4 weeks and at that time, based on his new PFTs and his symptoms, would fill out the paperwork for disability at that time").

The only evidence Mr. Walker points to in support of his assertion that Mr. Watson offered his opinion as an "agent" of Dr. Sekhri is the fact that Mr. Watson and Dr. Sekhri worked in the same office. *See* AR 60-61, 1207. Mr. Walker cites no authority for his assertion that this alone is sufficient to entitle Mr. Watson's opinion to the same weight as a treating physician's opinion, and this Court is aware of none. *See Molina*, 674 F.3d at 1111. Moreover, as the ALJ

ORDER - 10

correctly noted, the record does not contain any evidence about Mr. Watson's role in examining or treating Mr. Walker. Social Security regulations, 20 C.F.R. § 404.1527(c)(1), (2), therefore did not require the ALJ to give Mr. Watson's opinion the weight of an examining or treating medical opinion.

The ALJ offered germane reasons, supported by the record, to reject Mr. Watson's opinion that Mr. Walker would be severely limited in performing work functions. In particular, the record supports the ALJ's finding that neither Mr. Watson's form opinion nor other items in the record show how Mr. Watson arrived at his opinion that Mr. Walker would be off task at least 25 percent of the day. *See* AR 1210. Likewise, the record supports the ALJ's finding that Mr. Watson did not explain how Mr. Walker's need to sit quietly on breaks would prevent him from performing sedentary work or why Mr. Walker would miss four days of work per month. *See* AR 1209-10. An "ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). The ALJ did so here.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Mr. Walker to be not disabled. The Commissioner's decision to deny benefits is therefore AFFIRMED.

DATED this 22nd day of March, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 11